**Opinion filed June 29, 2018**



In The

# Eleventh Court of Appeals

_____

## No. 11-17-00197-CR

_____

## SERGIO GONZALEZ, Appellant

## V.

## THE STATE Of TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR48359**

## M E M O R A N D U M   O P I N I O N

The jury found Appellant, Sergio Gonzalez, guilty of the third-degree felony offense of attempted indecency with a child.[1]  The jury assessed his punishment at confinement for seven years and a fine of $7,000.  The trial court sentenced Appellant accordingly.  On appeal, Appellant asserts that the State adduced insufficient evidence to convict him.  We affirm.

---

[1]*See* TEX. PENAL CODE ANN. §§ 15.01, 21.11 (West 2011 & Supp. 2017).

## I. *The Charged Offense*

The grand jury indicted Appellant for one count of the offense of attempted indecency with a child. The grand jury alleged that Appellant attempted to commit, with specific intent, the offense of indecency with a child against A.H., a child younger than seventeen, by trying to untuck A.H.'s shirt, by putting his hand under A.H.'s shirt, and by touching A.H.'s stomach and torso near her breast, which said acts amounted to more than mere preparation that tended but failed to effect the commission of the offense of indecency with a child.

## II. *Evidence at Trial*

A.H., who was thirteen years old at the time of the alleged offense, is the child-victim in this case. Appellant was an employee of A.H.'s father, who owns an automobile body shop. On the night of the alleged offense, A.H. was at her father's auto shop with her family, Appellant, and a family friend. A.H. was in the office of the shop with her two brothers, J.H. and C.H., watching a video while A.H.'s parents were working and cooking food.

At some point, Appellant approached A.H. in the office and asked if she wanted to go to the store with him to get beer. A.H. asked J.H. to accompany her, but J.H. said that they needed to ask their parents' permission. A.H. and J.H. testified at trial that Appellant told them that he had permission to take them to the store. Appellant testified that A.H. and J.H. were lying: "I didn't tell them I asked permission, but I told them it's okay, your dad won't -- they won't say nothing." A.H.'s father testified that Appellant never asked if he could take A.H. or J.H. to the store, and A.H.'s mother testified that, if Appellant had asked her, she would have said no.

Appellant, A.H., and J.H. went to the store. Appellant drove, and A.H. and J.H. sat in the back seat. During the drive, Appellant stopped the car and let J.H. drive. J.H. moved to the driver's seat, and Appellant moved to the back seat with

A.H. J.H. thought it was weird that Appellant went to the backseat. As J.H. started to drive, Appellant started "touching" A.H. with his hands. A.H. testified that Appellant was touching her "[b]y the stomach and [her] back," and "[h]e tried to like take off [her] shirt, like he pulled it up." A.H. used her elbows to stop Appellant's hand. A.H. further testified that Appellant "grabbed [her] hips and tried to put [her] in his lap." This prompted A.H. to "jump to the front seat" with her brother. When they arrived at the store, A.H. told her brother to stay with her because she was "scared."

At some point on their drive back to the auto shop, A.H.'s father called Appellant multiple times. Appellant did not answer the phone calls. A.H. testified that Appellant was "scared," and J.H. testified that Appellant started "freaking out." They arrived back at the auto shop, and A.H. went back to the office. According to A.H.'s mother, A.H. "didn't want to say anything," and A.H.'s father testified that Appellant was "pretty nervous." A.H. then left the auto shop and ran to her aunt's house, which was next to the auto shop. Aide, A.H.'s aunt, testified that A.H. was crying and asking for help. Aide took A.H. to see Aide's sister, Janet, who is also A.H.'s aunt.

Janet testified that A.H. was "crying a lot" when she arrived at Janet's home. A.H. told Janet what had happened with Appellant. Janet and A.H. then returned to the auto shop and the police arrived. Officer Paul Thompson, a Midland County Sheriff's Deputy, testified that A.H. was "extremely hysterical, crying, [and] saying she was scared." Officer Thompson questioned Appellant, and Appellant told Officer Thompson that "nothing happened" and "we just went to the store." Appellant was arrested. At trial, Appellant denied touching A.H., but he admitted that he went to the store with A.H. and J.H. and that he sat in the back seat with A.H. while J.H. was driving.

3

### III. *Standard of Review*

The standard of review for sufficiency of the evidence is whether any rational jury could have found Appellant guilty beyond a reasonable doubt of the charged offense. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *see Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("[S]ufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."). We review the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Isham v. State*, 258 S.W.3d 244, 248 (Tex. App.—Eastland 2008, pet. ref'd). We defer to the trier of fact's resolution of any conflicting inferences raised by the evidence and presume that the trier of fact resolved such conflicts in favor of the verdict. *Jackson*, 443 U.S. at 326; *Brooks*, 323 S.W.3d at 894; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### IV. *Analysis*

In a single issue on appeal, Appellant argues that the State adduced insufficient evidence to sustain his conviction. Appellant argues that the evidence is insufficient for two reasons: (1) Appellant did not have "the specific intent to commit the offense of indecency with a child by contact" and (2) Appellant did not perform an act that would constitute an "attempt," but rather, Appellant's conduct was merely preparatory. A person commits the offense of attempted indecency with a child if, with specific intent to commit the offense of indecency with a child, the person did an act amounting to more than mere preparation that tends but fails to

effect the commission of the offense of indecency with a child. PENAL § 15.01; *see id.* § 21.11. One way a person commits the offense of indecency with a child is if, with a child under the age of seventeen, the person "engages in sexual contact with the child." PENAL § 21.11(a)(1). "[S]exual contact" is defined as including any touching by a person, including touching through clothing, of the breast of a child with the intent to arouse or gratify the sexual desire of any person. *Id.* § 21.11(c)(1).

### A. *The jury could have concluded that Appellant had the intent to arouse or gratify his sexual desire when he touched A.H., a child younger than seventeen years of age.*

Based on the grand jury's indictment, the State was required to prove that Appellant had the specific intent to commit the offense of indecency with a child. Specifically, the State was required to prove that Appellant had the intent to arouse or gratify the sexual desire of any person. *See Farris v. State*, 506 S.W.3d 102, 112 (Tex. App.—Corpus Christi 2016, pet. ref'd) (substantially similar indictment sufficient to charge the defendant with the offense of attempted indecency with a child by contact). Appellant argues that the State did not prove that he had the intent to arouse or gratify his sexual desire, primarily because none of the State's witnesses testified about Appellant's intent. But "[r]arely will there be direct evidence of what an accused intended at the time of the incident." *Jones v. State*, 229 S.W.3d 489, 497 (Tex. App.—Texarkana 2007, no pet.) (quoting *Scott v. State*, 202 S.W.3d 405, 408 (Tex. App—Texarkana 2006, pet. ref'd)). Intent may be inferred from the conduct and remarks of the actor and the surrounding circumstances. *Id.*

The record reflects that, when Appellant was with A.H. and J.H. in the car, he allowed J.H., who was twelve years old at the time, to drive on a "dark road." A.H. testified that Appellant began to touch her on her stomach and back. A.H. further testified that Appellant tried to lift her shirt up, grab her hips, and put her on his lap. A rational jury could have inferred from the testimony of A.H. that Appellant had

the intent to arouse or gratify his sexual desire. *See Jones*, 229 S.W.3d at 497 (evidence was sufficient to show that the defendant had the specific intent to arouse or gratify his sexual desire where child-victim's mother testified that defendant had his hands down child-victim's pants and child-victim testified that defendant told her "she was pretty, rubbed on her thigh area, and told her he loved her"); *see also id.* (noting that "[t]he intent to arouse or gratify may be inferred from conduct alone" and "[n]o oral expression of intent or visible evidence of sexual arousal is necessary"). The jury also could have considered evidence that Appellant invited A.H. to the store without her parents' knowledge and told A.H. and J.H. that he had permission from their parents to take them to the store. *See McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. [Panel Op.] 1981) (in conviction for indecency with a child, the jury could have deduced that defendant's statements were false and were part of a "ruse"). Moreover, when A.H.'s father confronted Appellant after the incident, Appellant "laugh[ed] and . . . said that he didn't do anything." "The intent to arouse or gratify sexual desire has been inferred from a defendant's laugh or smile." *Bryant v. State*, 685 S.W.2d 472, 475 (Tex. App.—Fort Worth 1985, pet. ref'd).

Appellant denied that he touched A.H. inappropriately. Appellant also said that A.H. and J.H. had lied about what he had told them about their parents' permission. Appellant claimed, "I didn't tell them I asked permission, but I told them it's okay, your dad won't -- they won't say nothing." The jury chose not to believe Appellant. The trier of fact may believe all, some, or none of a witness's testimony because the factfinder is the sole judge of the weight and credibility of the witnesses. *Sharp*, 707 S.W.2d at 614; *Isham*, 258 S.W.3d at 248.

*B. The jury could have concluded that Appellant did an act that amounted to more than mere preparation that tended but failed to effect the commission of the offense of indecency with a child.*

Appellant argues that there was no testimony that Appellant touched or attempted to touch A.H. in the areas prohibited by the indecency with a child statute, such as the anus, breast, or genitals. "[A]n attempt involves conduct that falls short of achieving the intended criminal objective." *Schemm v. State*, 228 S.W.3d 844, 846 (Tex. App.—Austin 2007, pet. ref'd). An attempt involves "an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended." PENAL § 15.01(a). The Texas Court of Criminal Appeals has stated that there is an "imaginary line" that "separates 'mere preparatory conduct,' which is usually non-criminal, from 'an act which tends to effect the commission of the offense,' which is always criminal conduct." *Flournoy v. State*, 668 S.W.2d 380, 383 (Tex. Crim. App. 1984). "This necessarily creates a 'gray area' within which the imaginary line is to be drawn." *Henson v. State*, 173 S.W.3d 92, 101 (Tex. App.—Tyler 2005, pet. ref'd). "Where the imaginary line is to be drawn depends on the nature of the crime attempted and must be considered on a case-by-case basis." *Jones*, 229 S.W.3d at 497–98.

The jury could have concluded that Appellant's conduct crossed the imaginary line between preparation and attempt and constituted actions that tended but failed to effect the commission of the offense of indecency with a child. As we explained above, "sexual contact" is defined as including any touching by a person, including touching through clothing, of the breast of a child if done with the intent to arouse or gratify the sexual desire of any person. PENAL § 21.11(c)(1). A.H. testified that Appellant touched her on the stomach and back, tried to lift her shirt up, and grabbed her around the hips and tried to place her on his lap. A jury could have concluded from this evidence that Appellant attempted to touch A.H.'s breast.

*See Jones*, 229 S.W.3d at 497 (holding that evidence was sufficient to show that defendant's actions were more than mere preparation where child-victim testified that defendant "was rubbing up against her leg and thigh, she thought he whispered that he loved her, and afterward he claimed that he thought she was [the child-victim's mother]"); *see also Farris*, 506 S.W.3d at 107; *Henson*, 173 S.W.3d at 102–03. Appellant's actions in this case were more than mere preparation and crossed the imaginary line into criminal conduct. Because a rational jury could have found beyond a reasonable doubt that Appellant committed the offense of attempted indecency with a child, we overrule Appellant's sole issue.

V. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


June 29, 2018

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Willson, J.,
Bailey, J., and Wright, S.C.J.[2]

---

[2] Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.