Opinion filed November 20, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-13-00086-CR

_____

### JAMES EMMITT WILSON, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR39499**

## M E M O R A N D U M   O P I N I O N

The jury convicted James Emmitt Wilson of theft of $1,500 or more but less than $20,000. The jury assessed punishment at confinement for twenty years with no fine. The trial court sentenced Appellant accordingly, but the trial court also ordered Appellant to pay restitution in the amount of $7,347.07. Appellant asserts a sufficiency challenge and claims that the trial court abused its discretion when it denied his request for a mistrial. We affirm.

## I. *The Charged Offense*

The grand jury indicted Appellant for the offense of theft over $1,500 but less than $20,000. A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property without the owner's consent. TEX. PENAL CODE ANN. § 31.03(a), (b)(1) (West Supp. 2014). The trial court authorized the jury to convict Appellant either as a principal or as a party to the offense. A person is guilty of the charged offense under the law of parties if he acts "with intent to promote or assist the commission of the offense, [and] he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." PENAL § 7.02(a)(2) (West 2011).

Because of his prior felony convictions, the State also sought enhanced punishment against Appellant. PENAL § 12.425(b), (c). The punishment for a person who has been convicted of the offense of theft over $1,500 but less than $20,000, and who is subject to enhanced punishment as a habitual offender, is confinement for not less than two years or more than twenty years. PENAL §§ 12.33(a), 12.425(b), (c). A fine of not more than $10,000 may also be imposed. PENAL §§ 12.33(b), 12.425(b), (c).

Appellant pleaded not guilty to the offense charged, and the case proceeded to trial.

## II. *Evidence at Trial*

The morning after Appellant had worked the previous night shift alone, Rachel Givens, the temporary manager of a Stripes convenience store in Midland, discovered that approximately $7,374 was missing from the store's safe. On the night before Givens discovered the missing money, she was at the store approximately two hours before Appellant arrived for his shift; she noted that nothing in the store, the back office, or the safe was out of the ordinary. Marisol Bonilla, a store employee, saw Givens count the money that evening and put it in

the safe. Bonilla left work at midnight, and another store employee, Mora McAllister, left at 11:30 p.m. Another cashier did not show up to work alongside Appellant, and Appellant failed to call Givens and notify her that he was alone at the store. From midnight until another employee, Rosa Carrasco, arrived at 5:14 a.m. to work in the kitchen, Appellant was alone, and he was the only cashier on duty from midnight to 6:16 a.m.

Givens returned to the store the next morning and discovered the theft about one-half hour after Appellant left. Givens also discovered that the security system DVR, which contained recorded video footage from the store's security cameras, was gone. Givens called her area manager and the Midland Police Department. Midland Police Officer Marcus Dominguez promptly arrived at the Stripes convenience store to investigate the theft. Eventually, Sergeant David Scardino and Detective Geovarsey Mitchell, also of the Midland Police Department, joined Officer Dominguez.

Givens and the responding officers immediately suspected Appellant, and they also identified Jackie Slate, Appellant's roommate, as a suspect. Earlier in the evening, and before the theft, Bonilla saw Slate loitering at the Stripes store. Bonilla said that Slate stayed there for about an hour and that it was unusual for him to do that. Slate had been an assistant store manager for Stripes, but his employment had been terminated, and he knew how to access the office and the safe located inside the office.

Stripes only gave keys to the office to managers and assistant managers; the keys to the safe were on the desk that was inside the office. Prior to the theft, management was concerned because the door to the office could be "pop[ped]" open because there was a gap between the door and the doorjamb. A wooden strip was installed to solve the problem, but a person could remove the screws from the wooden strip and "pop" open the door.

Officer Dominguez, Sergeant Scardino, and Detective Mitchell left the store and went to Appellant and Slate's trailer to question them. Slate let the officers in and took them to the bedroom where Appellant was asleep. Officers awakened Appellant, and Appellant and Slate accompanied them to the front room.

Slate and Detective Mitchell eventually returned to the bedroom that Slate and Appellant shared, and Slate then directed Detective Mitchell to $390 in thirty-nine rolls of quarters[1] in a Texas Lottery bag[2] stashed in an entertainment center. The officers searched the rest of the common areas of the trailer for the remaining stolen cash and DVR, but did not locate or recover either one. Appellant, who was frustrated with the situation, answered Detective Mitchell's questions and told Detective Mitchell that he had been to prison. Appellant was not under arrest at this point.

At trial, Detective Mitchell recounted what Appellant had told Detective Mitchell during the interview at Appellant's trailer. Detective Mitchell said that Appellant told him that Appellant had "been to prison" before. Appellant's counsel immediately objected to the testimony about Appellant's prior criminal history. The trial court instructed the jury to disregard the improper testimony, but it denied Appellant's request for a mistrial.

### III. *Issues Presented*

Appellant asserts that the evidence was insufficient to convict him of theft. Appellant also asserts that the trial court improperly denied his mistrial request after Detective Mitchell testified about what Appellant had told Detective Mitchell about Appellant's prior criminal history.

---

[1]The quarters were identified as the property of the Stripes convenience store and were eventually returned.

[2]Givens testified that Texas Lottery bags were kept in the office near the safe.

IV. *Standards of Review*

We review a sufficiency challenge under the standard outlined in *Jackson v. Virginia* and its progeny. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Cada v. State*, 334 S.W.3d 766, 772–73 (Tex. Crim. App. 2011); *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.— Eastland 2010, pet. ref'd). We examine all the evidence in the light most favorable to the verdict and determine whether, based on the evidence and any reasonable inferences from it, any rational finder of fact could have found the existence of all of the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi*, 330 S.W.3d at 638. Evidence is insufficient when (1) the record contains no evidence probative of an element of the offense, (2) the record contains a mere "modicum" of evidence probative of an element of the offense, (3) the evidence conclusively establishes reasonable doubt, or (4) the acts alleged do not constitute the criminal offense charged. *Brown v. State*, 381 S.W.3d 565, 573 (Tex. App.—Eastland 2012, no pet.).

We review Appellant's claim that the trial court improperly denied his request for a mistrial under an abuse of discretion standard. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). We will not hold that the trial court abused its discretion unless the trial court's decision was outside the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000). A trial court must grant a mistrial when the error "was clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Young*, 283 S.W.3d at 878.

5

V. *Analysis*

A. *Sufficiency of the Evidence*

Based upon the jury charge, the jury could have convicted Appellant as a principal or as a party. *See* PENAL § 7.02(a)(2). The jury also could have considered events occurring before, during, and after the offense that circumstantially proved an understanding or common design to commit the offense. *See Gross v. State*, 380 S.W.3d 181, 186 (Tex. Crim. App. 2012); *Wirth v. State*, 361 S.W.3d 694, 697 (Tex. Crim. App. 2012).

Givens checked the safe at approximately 8:00 p.m., and all the money that had been placed there was present; Bonilla corroborated Givens's testimony. After McAllister and Bonilla left, Appellant was the only cashier on duty from midnight to 6:16 a.m. Appellant was required to report to Givens that a coworker had failed to report for work and that Appellant was alone at the store, but he did not.

Appellant argues that his mere presence at the scene of a crime is insufficient to show that he committed a crime and that others could have committed the theft. But Appellant's presence at the crime scene is a circumstance tending to prove guilt and, when combined with other facts, may show that he is guilty of the crime. *Wright v. State*, 603 S.W.2d 838, 840–41 (Tex. Crim. App. 1980). In addition, a defendant's unexplained possession of property recently stolen permits an inference that the defendant stole the property. *Rollerson v. State*, 227 S.W.3d 718, 725 (Tex. Crim. App. 2007); *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). Thus, circumstantial evidence adduced at trial, taken together, can be sufficient to prove Appellant's guilt. *Hooker v. State*, 621 S.W.2d 597, 601 (Tex. Crim. App. 1981).

Givens discovered the missing money and the missing DVR one hour after Appellant left work. Givens reported the theft, and police officers went to Appellant's trailer and questioned both Appellant and Slate. Slate directed

6

Detective Mitchell to $390 in rolls of quarters in a Texas Lottery bag stashed in an entertainment center in the bedroom that was shared by Appellant and Slate. Appellant claims that his roommate, Slate, had the means and opportunity to commit the theft of more than $7,000 because Slate had been an assistant store manager, knew how to access the office and the safe, had been loitering around the store when Appellant was on duty that evening, and shared the bedroom where the quarters were found.

Appellant also argues that, because the office door could be "jimm[ied]" and the safe keys were inside the office, any employee could have committed the theft. But the money went missing during Appellant's shift. McAllister, Carrasco, Bonilla, and Carolyn Choice, another cashier, each testified that they did not have any involvement with the crime. If another person was involved, that person would have had to commit the theft while Appellant was on duty.

The jury weighed the evidence and was free to believe or disbelieve any witness and to resolve any conflicts in the evidence. *See Young*, 283 S.W.3d at 861. With all of the evidence taken together and viewed in a light most favorable to the verdict, we hold that a rational jury could have found that Appellant was guilty of theft because there was sufficient evidence to support each element of the offense of theft beyond a reasonable doubt. We overrule Appellant's first issue.

### B. Denial of Mistrial

Appellant asserts that the trial court erred when it denied his request for a mistrial and, instead, instructed the jury to disregard the statement made by Detective Mitchell that Appellant had told Detective Mitchell that Appellant had been to prison. In *Gardner v. State*, the Court of Criminal Appeals held: "That appellant had been to the penitentiary was undoubtedly inadmissible and prejudicial testimony, having no relevance to any issue at the guilt stage of trial. However, that bare fact, unembellished, was not so inflammatory as to undermine

7

the efficacy of the trial court's instruction to disregard it." *Gardner v. State*, 730 S.W.2d 675, 697 (Tex. Crim. App. 1987). The law generally presumes that instructions to disregard testimony will be duly obeyed by the jury and sufficient to cure any error. *Id.* But there are situations when an instruction may not cure the error, so each case must be examined individually to determine whether the facts warrant reversal because of an incurable error. *Williams v. State*, 643 S.W.2d 136, 137 (Tex. Crim. App. [Panel Op.] 1982) (deciding whether the unresponsive testimony that a marriage was annulled when the defendant "got sent to the penitentiary" was reversible error).

In *Williams*, the defendant's prior criminal history was introduced in unresponsive testimony, and because Williams did not testify or offer evidence, such information was irrelevant and inadmissible. *Id.* at 138. In addition, the *Williams* court determined that the trial court's instruction was insufficient to cure the error. *Id.* (citing *Salinas v. State*, 175 S.W.2d 253 (Tex. Crim. App. 1943) (where improper testimony about defendant's time in penitentiary was admitted and maximum sentence was imposed following defendant's guilty plea, instruction by court to disregard testimony did not cure error)). Nonetheless, the *Williams* court found the incurable error harmless because the evidence against Williams, who was charged with theft of a Corvette, was overwhelming; Williams was caught in possession of the very Corvette that had been stolen. *Williams*, 643 S.W.2d at 138–39. And, because Williams was charged as a habitual offender and his prior criminal history was admitted during the punishment phase, the error did not affect Williams's punishment. *Id.*; *see also* TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3 (West Supp. 2014).

Detective Mitchell's statement that Appellant had told Detective Mitchell that Appellant had "been to prison" was inadmissible. But in light of the unembellished nature of the comment and the instruction given by the court, which

8

we presume the jury followed, absent any contrary evidence, the error was cured by the instruction. Moreover, in light of the evidence of Appellant's guilt, the error was harmless. And the inadmissible testimony did not affect Appellant's punishment because he was charged as a habitual offender and his criminal history was introduced during the punishment phase. We hold that the trial court did not abuse its discretion when it denied the motion for mistrial. We overrule Appellant's second issue.

## VI. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


November 20, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.